## B. F. STAFFORD V. R. E. STAFFORD.

### Decided May 14, 1902.

**1.—Mortgage—Absolute Deed—Parol Evidence.**

A deed absolute on its face may be shown by parol evidence to be in fact a mortgage.

**2.—Same—Constructive Trust.**

Where B.'s interest in land was to be sold on execution, and it was agreed that R. should purchase the land at such sale, and take title as security for the payment to him by B. of the amount of the debt, such agreement being unknown, except to the parties, and R. thereafter died, and B. sued his devisee to recover the land, tendering the amount of the debt, the transactions did not create a constructive trust, although the sheriff's purpose was to pass the legal title, and he was no party to such private agreement.

**3.—Same—Limitations.**

Where there is a deed of land absolute in form, but in fact a mortgage, nothing short of adverse possession of the land on the part of the mortgagee satisfying the requirements of the statute of limitations barring an action for land will vest the title in the mortgagee by limitations.

Appeal from Colorado.  Tried below before Hon. M. Kennon.

*W. L. Adkins,* for appellant.

*Denman, Franklin & McGown* and *M. H. Townsend,* for appellee.

GILL, ASSOCIATE JUSTICE.—This suit was brought by B. F. Stafford for the recovery of an undivided interest in certain lands and for partition, on allegations which for the purposes of this opinion may be stated in substance as follows:

He averred that on and prior to the 3d day of December, 1889, he and R. E. Stafford, the husband of appellee, were the joint and equal owners of certain lands described in the petition.  That one Carlton, having a judgment against appellant for $968.03, had his (appellant's) interest in the lands seized under execution and advertised to be sold by the sheriff on the 3d day of December, 1899.  That prior to the sale he had arranged with R. E. Stafford to lend him the money to pay off the judgment and prevent the sale, taking a mortgage on the land as security, but the latter failed to draw up the papers, so on the day of sale it was agreed that R. E. Stafford should attend the sale, buy in the land for appellant, paying for it with the money agreed to be loaned, taking the deed from the sheriff in his (R. E. Stafford's) own name, but simply for the purpose of a mortgage to secure the loan.  That in accordance

with this agreement R. E. Stafford attended the sale, bid in the property, taking the deed to himself, and reported to appellant that he had bid in the property for $1000, which would slightly exceed the judgment, and that appellant should get the overplus from the sheriff so that the debt would be an even $1000, which could be repaid when they had a settlement of their mutual accounts growing out of a course of dealing between them. That on the 7th of July, 1890. and before such settlement was had, R. E. Stafford died, leaving appellee his sole devisee. That suit by appellant became necessary to compel a settlement of the mutual accounts between him and his deceased brother, which suit was filed on the 3d day of March, 1894, against his widow, the appellee, and settlement was finally had by compromise in 1899. This suit had no reference to appellant's claim to the land. That during his life R. E. Stafford set up no claim to the land, but at all times admitted appellant's title, and that appellee never set up any claim to the land until about three years before the filing of this suit. It was further alleged by appellant that the land in question had been purchased by him and his brother from the State, and that certain payments of purchase money had been made by his deceased brother and by the appellee after his death, on the joint account of himself and them, and he tenders all he may owe of such payments, as well as the amount of the loan and interest, and prays for judgment for his interest in the land and for partition.

By supplemental petition he alleged that appellee had sold a part of the lands at great profit, and he prayed to be permitted to share therein, and that his share be offset, so far as it would go, against what he might be found to owe for purchase money paid on his account. There was no allegation that appellee had knowledge, at the time of her husband's death or afterwards, that the sheriff's deed was by parol agreement to operate as a mortgage for the security of the loan, or that the deed was otherwise than an absolute conveyance.

To these pleadings appellee specially excepted on the ground that they showed on their face that appellant's right to have the absolute deed of the sheriff declared a mortgage was barred by the statute of limitation of four years.

The trial court sustained the exception, and B. F. Stafford, refusing to amend, has appealed.

Appellant contends that the sheriff's deed was in fact a mortgage by force of the parol agreement between himself and his deceased brother. That the title did not pass thereby, but remained in appellant, and that therefore the statute of limitation of four years, nor for any other term, applies, there being no possession.

Appellee contends that the transaction with the sheriff in pursuance of the parol agreement constituted either an express or resulting trust in R. E. Stafford in favor of appellant. That the legal title by force of the sheriff's deed passed to deceased, and that upon his death appellee, being his sole legatee without notice of the trust, became a constructive

trustee, which presupposes an adverse claim, and the action to establish and enforce the trust must therefore have been brought within four years from the death of R. E. Stafford.

With this statement of the opposing contentions it will be unnecessary to notice the assignments of error in detail.

That a deed absolute on its face, with contemporaneous parol agreement that it shall operate only as security for the debt of the maker, is a mortgage, is a proposition too well settled to require citation of authorities in its support. The right to establish this contemporaneous agreement by parol is a doctrine established by courts of equity, the law courts formerly refusing to assume the power to hear such proof. Jones on Mort., sec. 282.

Various reasons were given in the earlier decisions for permitting the terms of a written instrument thus to be varied by parol, notwithstanding the statute of frauds, most of the courts resting their action upon the ground that equity should always interfere to prevent a fraud, and the effort of the grantee to use the deed as an absolute conveyance, in the face of the actual agreement to the contrary, was an effort to perpetrate a fraud on the grantor which courts of equity would prevent by hearing proof of the real nature of the transaction. The statute of frauds was supposed at first to stand in the way, but the courts after much hesitation established the present rule. Jones on Mort., sec. 322.

The reasons given, however, were not consistent and logical reasons, but may rather be termed excuses for interfering to prevent the harsh and unjust operation of an otherwise wise and beneficent law. Courts of equity, recognizing the proneness of persons in financial difficulties to submit to hard bargains to procure money and the proneness of creditors to make hard terms, sought to discover a means of relief. This perhaps accounts for the difficulty the courts met with in agreeing upon some common ground for the exercise of the power. If the deed was absolute and the agreement that it should operate as a mortgage rested in parol, there was no fraud nor any mistake in its procurement or execution, for it was the deliberate act of the parties. The effort of the grantee in such a deed to claim according to the letter of its terms is but an effort to exercise a right which is accorded him in other forms of contracts, because ordinarily where parties reduce their contracts to writing they will not be heard to say they failed to embody their entire agreement in the writing, unless on allegations of fraud or mistake, but are conclusively presumed to have embodied the entire contract in the written instrument.

It is now said that a deed absolute, with parol agreement that it shall be a mortgage, is in fact a mortgage, and will be so treated. That the courts will hear parol proof of the real nature of the transaction and the true intent of the parties, proceeding upon the theory that the defeasance was omitted through mutual confidence (Jones on Mortgages, section 285), and regarding this as a sufficient excuse for them to interfere.

Such a transaction is a mortgage from its inception. The courts upon hearing such proof do not change the nature of the contract, nor make a new contract for the parties, but merely ascertain what the contract in fact is and was, and adjust the rights of the parties with reference to its nature as thus ascertained. 20 Enc. of Law, 2 ed., p. 937. Stampers v. Johnson, 3 Texas, 1; Ruffin v. Wood, 30 Texas, 343; Gibbs v. Perry, 43 Texas, 560.

It follows, therefore, that the mortgagor does not ask the court to declare the deed a mortgage, but avers that it is already one and has ever been so, and on proof of these allegations he has established his case. It seems to us to be immaterial that the evidence by which this is sought to be done can be heard only on the equity side of the court. If it is a mortgage, it was always a mortgage. The rights of the parties were fixed at the date of the transaction. That the defeasance rests in parol renders it none the less a defeasance, and since the parties did not intend the title to pass and this intention will be respected, the title does not pass. In such a transaction the paramount title remains in the mortgagor as effectively as if the deed had contained a written clause of defeasance. In this State the mortgagor, notwithstanding the terms of the conveyance, remains the real owner of the fee, the mortgage being treated as a mere incident of the debt; hence the foundation of many rights of the mortgagee at common law does not exist in Texas. Willis v. Moore, 59 Texas, 628; Duty v. Graham, 12 Texas, 428.

The grantee secures the right of a mortgagee, and the title can be divested by the mortgagee only by foreclosure and sale for the payment of the debt. Payment of the debt discharges the mortgage, and no reconveyance is necessary, but as the deed evidences prima facie a title in the mortgagee, if the latter should refuse to execute a release upon discharge of the debt, the mortgagor would have his action to declare the real nature of the instrument and remove or cancel it as a cloud upon his title. Such an action would be barred within four years from the time when the cause of action arose, but the existence of the instrument after the bar would not extinguish the paramount title of the mortgagor.

Nothing short of adverse possession on the part of the mortgagee satisfying the requirements of the appropriate statute of limitation barring actions for land would vest title in the mortgagee by limitation.

If the mortgagee should sell to a bona fide purchaser for value on the faith of the absolute deed, the latter would get title by estoppel, and not because the mortgagee had the legal title and the right to convey.

It is true such a transaction has been frequently called a trust or equitable mortgage, and the action of the courts inquiring into the facts and enforcing the parol agreement has been termed ingrafting a parol trust upon a written instrument, but when the inquiry is made and the instrument found to be a mortgage, the rights of the parties must be measured by the rules of law governing such instruments. In Crane v. Buchanan, 29 Indiana, 570, and Church v. Cole, 36 Indiana, 34, such deeds are held to be mortgages and not trusts.

It is thus seen that a deed absolute on its face, but given as a security for a debt, is a mortgage with all the usual incidents of a mortgage, except such as grow out of the dealings of third parties without knowledge of the facts, and the right of a court of equity to impose equitable conditions in consideration of the hearing of parol proof. Jones on Mort., sec. 283; Hannay v. Thomson, 14 Texas, 142; Mann v. Falcon, 25 Texas, 275.

It follows, therefore, that if the facts set up in the pleadings of appellant amount to a mortgage of the nature above discussed, that is to say, if the parties who could have made the transaction a mortgage by a deed direct from R. E. Stafford to deceased with the accompanying parol agreement, could through the sheriff acting as their unconscious agent convert the sheriff's deed into a mortgage, then the defense of the four years statute of limitation is ineffectual.

The sheriff conducting a sale under execution is not the agent of the judgment creditor, but in a certain sense the agent of the judgment debtor, constituted such by law, without the consent of the latter, to convey such title as the judgment debtor has in the property sold. His authority as such grows out of the judgment, execution, and levy just as the trustee in a deed of trust or the mortgagee in a mortgage with power of sale is an agent or attorney in fact for the owner of the property for the purpose of conveying title to the purchaser at a sale for the payment of the debt thereby secured, deriving his authority from the instrument under which he acts. The deed in each case connects the title of the purchaser with that of the debtor, and the judgment and execution in the one case and the mortgage or deed of trust in the other is the source and evidence of such authority. Ordinarily what one can do by himself he can do through another, and in the foreclosure of an ordinary mortgage the law requires the sheriff to do for the mortgagor what he himself should have done.

In the case before us the loan was actually arranged. The things to be done and the manner of doing them were agreed upon. At the last moment, and when it was too late to arrange otherwise, B. F. Stafford, the debtor, actually assented to the sheriff's sale and sought to modify its effect by the parol agreement. The sheriff had no concern in the matter save to secure the satisfaction of his execution. Had both parties been present at the sale and notified him of their purposes and agreement, he could not on any sound legal principle have forbidden the arrangement.

Appellant's counsel contend that such a transaction as the one alleged is not a mortgage but a constructive or resulting trust, enforcible alone in equity, because the sheriff's purpose was to pass the legal title and he was no party to the private arrangement between the parties and had no knowledge of its existence. If this is sound, then if he had such knowledge and did assent, the transaction would become a mortgage. But what is the difference in either its practical or legal effect? Sup-

pose one acting under a power of attorney for the conveyance of lands is authorized by his principal to make an absolute deed to a tract of land, and suppose the grantee in such deed in fact accepted it under an agreement with the principal that it should operate only as security for a debt, could the facts that the principal saw fit to withhold from his attorney in fact knowledge of the parol agreement have any possible effect on the nature of the transaction? It seems to us the practical and legal effect is the same, both in the case supposed and the case at bar. We can perceive no reason for requiring the principal to disclose his private purpose to his agent. The exact point has been decided in favor of the doctrine here announced. Sweetzer's Appeal, 71 Pa. St., 264; Danzeizer's Appeal, 73 Pa. St., 65; Jones on Mort., sec. 334.

On a like state of facts it has been held in Texas that the relation of mortgagor and mortgagee is established, and that the mortgagor's interest is thereafter subject to execution. Howard v. Hirshfield, 59 S. W. Rep., 55.

In the case cited the words mortgage and trust are loosely used, the court not being called on to make the distinction, and this is true of many cases in which, by reason of the fact that the question was discussed only incidentally, the courts did not undertake to distinguish the terms.

Appellee cites the case of Satterwhite v. Loomis, 81 Texas, 64, in support of his contention that the transaction constitutes a trust. In that case Loomis & McLachlin had been acting as agents for Satterwhite in the sale of lands. Having occasion to leave the State temporarily, Satterwhite withdrew his lands from sale. In his absence some of his lands were levied on and sold, and his former agents, voluntarily acting for his protection, bought the lands in for his benefit, using their own funds for the purpose and taking a deed to themselves. Thereafter they sold the lands, and were sued by Satterwhite for their value. It was decided that the agents held the land in trust for their former principal, and he was permitted to recover their value upon reimbursing the agents for their outlay. But in that case there was no agreement, no debt, no relation of debtor and creditor. The agents intended to take title to themselves and actually did so. The transaction could not have been a mortgage, for there was no agreement that it should be such, and all the elements of a mortgage were lacking. The decision amounts to no more than a declaration that even a voluntary agent will be held to good faith with his principal.

In McCampbell v. Durst, 15 Texas Civil Appeals, 522, the deed assailed was made by the administrator in fraud of the heirs, and under such circumstances that by a timely action on their part it could have been annulled. The administrator had the authority to make the sale and deed, and the title thereby actually passed to the grantee. It was held that the suit to annul the deed for fraud was barred in four years. By reason of the fraud a constructive trust arose in favor of the de-

frauded heirs, and their right to enforce it was of course subject to the
bar of stale demand, or our statute of four years.

In Hearst v. Kuykendall, 16 Texas, 327, and Miller v. Rusk, 17
Texas, 170, also cited by appellee, it is held that a suit for specific per-
formance to convey land is a personal action, and need not be brought
in the county where the land is situate.

It is clear that none of the authorities relied on by appellee are de-
cisive of the question, and it seems to us they are entirely consistent with
the conclusion we have reached.

When a deed is assailed for fraud equity will annul it because it
ought not to be permitted to stand. But the right to annul a fraudu-
lent deed will not support an action of trespass to try title. The right
to annul the deed must be first exercised in a direct attack thereon. The
deed may be annulled and the possession of the land and damages re-
covered in the same suit, if it be against a party to the fraud or one
having notice of it.

But let us suppose a case where a fraudulent grantee conveys to
another in satisfaction of an antecedent debt, or without consideration.
The deed can not be collaterally attacked in a suit against the grantee.
This is illustrative of the class of cases in which the right to recover
property rests upon the establishment of an equity, distinct from the
right to the property.

In the case at bar the paramount title being in B. F. Stafford, and
the right to possession being in him, it is clear that if he had been
illegally ousted by another, under claim of title, he could have recovered
upon proof of the facts, and a plea of outstanding title in R. E. Stafford
could have been met and defeated by proof that the deed evidencing
that title was in fact a mortgage. Hannay v. Thompson, and Mann v.
Falcon, supra.

Let us carry the illustration a step further. Suppose R. E. Stafford,
after procuring the deed, had promptly laid claim to the land there-
under, repudiating the parol agreement; and suppose B. F. Stafford
had possession of the property; it is plain that within the period of
limitation contended for by appellee the mortgagee could not have re-
covered the land of the mortgagor except by foreclosure and sale, for
within that time he could have been effectively met by proof of the facts.
If then he sued for possession after the expiration of the bar, could any
court consistently hold that his suit would not be defeated by proof of
the facts? In such case the mortgagee's suit would not be allowed to
prevail, but the mortgagor's right in a cross-action to have the deed
annulled as a cloud upon his title might be barred. And herein lies
the distinction which is happily made by Justice Williams in discussing
the questions involved in McCampbell v. Durst, supra.

Inasmuch as the only ground upon which the demurrer could have
been sustained is set forth in the contention of appellee set out above,
and as we are of opinion it is untenable, it is unnecessary for us to

determine whether a devisee, such as appellee, could set up the defense
of limitation, if it were otherwise permissible.

For the reasons given, the judgment is reversed and the cause re-
manded.

*Reversed and remanded.*