## W. F. Erp v. Annie Meachem.

### Decided May 11, 1910.

**1.—Purchase of Land—Payment—No Resulting Trust.**

Where a person seeking to enforce a resulting trust in land did not at the time of conveyance make any part of the cash payment, or made only a part thereof, and the obligation of the grantee named in the deed was given for a deferred payment, subsequent payments by such person of the deferred payment will not create a resulting trust in his favor. Such a trust must result, if at all, at the instant the deed is taken and the legal title is vested in the grantee. Unless the transaction is such at the moment the title passes that a trust will result from the transaction itself, no oral agreements and no payments before or after the title is taken, will create such a trust.

**2.—Same—Loan not Payment.**

Where one, acting for another in the purchase of land, uses his own money in making the cash payment but becomes in no manner bound for the deferred payments, and intends and expects when he makes the cash payment to be repaid the same by the grantee in the deed, no trust results thereby to secure him in the repayment of the money in the event the grantee fails or refuses to reimburse him. It would be otherwise if the estate was conveyed on his credit and he bound himself for the unpaid purchase money.

**3.—Same—Volunteer—Limitation.**

The statute of two years' limitation will bar an action for money paid upon land or in discharge of liens thereon when the payments were made without the knowledge or consent of the grantee and were purely voluntary.

**4.—Resulting Trust—Insufficient Evidence.**

Evidence considered and held insufficient to establish a resulting trust in land.

Appeal from the District Court of Liberty County. Tried below before Hon. L. B. Hightower.

*Marshall & Marshall,* for appellant.

*John Broughton* and *Stevens & Pickett,* for appellee.

REESE, Associate Justice.—This suit was instituted by W. F. Erp against Mrs. Annie Meachem to establish a resulting trust in his favor in an undivided one-half of 320 acres of land which he alleges he had bought for himself and defendant, taking the title in her name, but plaintiff paying one-half of the purchase money out of his own funds with the intention of acquiring the land, one-half for himself and one-half for Mrs. Meachem. He pleaded in the alternative that if it be held that he is not entitled to the land, that he have judgment for the amount paid by him to discharge an outstanding vendor's lien, which was a part of the consideration for the conveyance, also certain amounts paid as interest to the State on original

purchase price, and certain taxes paid by him, and that the same be decreed to be a lien on the land.

Defendant denied generally all the allegations of the petition, and, as to the payments alleged to have been made by plaintiff, replied, first, that such payments were voluntarily made by him without her knowledge or consent, without legal obligation on plaintiff to make the same, and imposed no legal obligation on defendant; and second, that plaintiff's demand based upon such payment, was barred by the statute of limitation of two years.

By supplemental petition plaintiff replied to the plea of limitation that he and defendant were tenants in common, and limitation did not run until such tenancy was repudiated, to wit: on October 1, 1907; that the facts created such a trust relation between them; that until it was repudiated as aforesaid limitation did not begin to run; and, further, that within the two years defendant had promised to pay the sums claimed.

The case was tried with the assistance of a jury, resulting in a verdict and judgment for defendant, from which plaintiff Erp prosecutes this appeal.

The evidence was sufficient to authorize the following conclusions of fact: The 320 acres of land in controversy originally belonged to the State as free school land and was sold by the State to Vince Barrow at $2 per acre, of which one-fortieth was paid in cash, leaving $1.95 per acre still due the State. On February 6, 1900, Barrow sold the land to Harwood for $4 per acre, payable $320 cash, $320 in one year with eight percent interest, for which Harwood executed his note with vendor's lien. Harwood, as part of the consideration, assumed the payment of the obligation to the State. On February 8, 1900, Harwood conveyed the land to Mrs. Meachem. The deed recites that the consideration for this conveyance was $1,920 paid by Mrs. Meachem as follows: $960 in cash, and the balance by assuming the payment of $2 per acre due the State, and also the assumption of the payment of the vendor's lien note to Barrow, both of which the grantee in the deed expressly assumes and agrees to pay. It appears that, in fact, Erp had contracted with Harwood to buy the land for Mrs. Meachem at $6 per acre on January 29, 1900, and had paid $50 as earnest money, as shown by receipt of Harwood in evidence. Harwood was at the time, secretary, and Erp, treasurer, of the Raywood Rice and Canal Company. This was after Mrs. Meachem had engaged Erp to buy some land for her, and before Harwood appears to have acquired title to the land from Barrow.

It appears that in December, 1899, Mrs. Meachem, who was a sister-in-law of Erp and who lived at the time in Iowa, while on a visit to Erp spoke to him about buying some land for her. She appears to have had a little money which she desired to invest in Texas land. After she returned to Iowa, in December, 1899, Erp made the trade with Harwood, and wrote to Mrs. Meachem that he bought the land for $1,920, telling her that he had bought it for her, but that if it was too much for her and she did not care to keep it all, he would take half of it. At the time Erp bought the land he either had in his hands $500 belonging to Mrs. Meachem, or, if he had spent it,

he owed her that much, having gotten the money under the following circumstances: Upon the occasion of the visit of Mrs. Meachem referred to, she left with Erp $975 and as soon as she got home sent $25, the entire amount to be used to buy a house and lot in Raywood from one Miller. Soon afterwards Erp bought the house and lot for that price, but only paid $500 cash, a lien being reserved in the deed to secure a note for the other $500. This note was sent to Mrs. Meachem, but she refused to sign it. Mrs. Meachem moved to Raywood in 1901 and made repeated efforts to get this deed which was in Erp's possession and not recorded, but could never get it until about 1904. Erp afterwards, it does not appear when, paid Miller this $500, and in 1908 Miller executed to Mrs. Meachem a release of the vendor's lien.

When Erp bought the 320 acres in controversy, he paid $320 when he got the deed, and shortly afterwards $640. Mrs. Meachem sent him at different times, $1,000 to pay on the land. It appears that some of this was sent before Erp paid the $640. When the Barrow note fell due, which was twelve months afterwards, he paid that, and paid the taxes on the land and the interest due the State, but these payments were all made without Mrs. Meachem's knowledge, and were made voluntarily by Erp under circumstances to be hereafter explained, and all the payments were made more than two years before this suit was filed.

The evidence authorizes either of the two following inferences, either of which would, under the charge of the court, have warranted the verdict of the jury. Either Erp had no intention of taking any interest in that land for himself when he purchased, but conceived the idea afterwards, expecting Mrs. Meachem to reimburse him for what of his own money he had expended, or, if he intended to take a half interest in the land, he intended that the cash payment should be made by Mrs. Meachem, and that he would pay the Barrow note for $320 and pay the money due the State for his half of the purchase money. But he assumed no personal liability whatever. He paid the Barrow note when due, but had not in any way obligated himself so to do, and Barrow knew nothing of Erp's connection with the matter until he paid the note. In the deed to Mrs. Meachem it is expressly stated that she is to assume the payment of the purchase money due the State, and of the Barrow note, as part of the consideration for the land. The intention of Erp to take one-half of the land and to pay the Barrow note and the amount due the State, if it existed at the time of the purchase, was a mere mental process, not evidenced in any way by any outward sign. Mrs. Meachem could never get possession of this deed until some years after she came to Raywood to live, though she repeatedly asked for it. Upon the trial Erp tendered into court the amount due the State in case his claim to one-half interest in the land should be sustained.

When appellant wrote to appellee advising her of the purchase of the land at $1,920, he spoke of it as 640 acres, probably by mistake, and appellee supposed that 640 acres had been bought, 320 acres for her and 320 acres for appellant, and that she had, in paying the $1,000, paid $40 more than sufficient to pay for 320 acres, and she

did not know until she got possession of the .deed the true condition, as here found.

There is no merit in the first assignment that the court erred in overruling appellant's motion for a new trial, on the ground that the uncontroverted evidence established a resulting trust in appellant.

The second assignment of error complains also of the action of the court in overruling the motion for a new trial, on the ground of error in giving a special instruction requested by appellee. No reference is made in the statement under the assignment to this charge, nor is even the substance thereof given in the assignment or elsewhere in the brief, and we might properly disregard the assignment. Referring to the record, however, we find that the charge is as follows: "You are further charged that if you find from the evidence that the plaintiff, W. F. Erp, at the time the land was deeded to Mrs. Meachem by Harwood on February 8, 1900, intended to pay and did pay for Mrs. Meachem the $960, cash payment for which Harwood sold the land, whether you find such payment was made with the money of Mrs. Meachem or the money of Erp; and you further find that Erp intended that his half of the purchase money should be the $320 note due Vince Barrow on February 6, 1901, and the further sum of $1.95 per acre due the State of Texas as purchase money for said land; and you further find that Mrs. Meachem afterwards repaid the said cash payment, if you find that Erp paid same out of his own funds, then no resulting trust arose in favor of plaintiff, and you will return a verdict for defendant."

This charge is a correct statement of the law as applied to the evidence, and must be taken in connection with the main charge. The uncontradicted evidence shows that the cash paid by Erp, in so far as it was paid out of his own money, was intended by him as a loan to appellee, for which appellant intended he should be reimbursed by appellee, and which was, in fact, at once repaid to him. (Whaley v. Whaley, 71 Ala. 159).

If it was his intention that for his half of the purchase money he should pay the Barrow note and the balance due the State, he gave no evidence of such intention at the time of the purchase and conveyance. By the terms of the deed to appellee she was to assume payment of both these amounts, for which the land was charged. Appellant took no obligation on himself to pay either. He could not merely by intending to pay these items of indebtedness, appellee having no knowledge of such intention and in no way agreeing thereto, nor by afterwards paying them, establish a resulting trust in his favor. The following statement of the law on this point is supported by the authorities and is applicable to the facts of this case, as shown by the uncontroverted evidence:

"Where the person seeking to enforce the resulting trust did not, at the time of the conveyance, make any part of the cash payment, or made only a part thereof, and the obligation of the grantee was given for the deferred payment, subsequent payments by such person of the deferred payments can not be taken into consideration in determining the question of a resulting trust in his favor.

"It is not necessary that the person seeking to enforce the trust

should have paid the cash at the time of the purchase. Thus, if the estate is conveyed on his credit, and he, at the time of the conveyance, executes his own obligations for the future payment of the purchase money, this constitutes a sufficient payment of the purchase money at the time of the conveyance to create a resulting trust, and the grantee can not by subsequently paying the purchase money for which the other became bound, defeat a resulting trust in favor of the latter." (15 Am. & Eng. Ency. of Law, 1145-6).

Appellant himself testified that he intended and expected that appellee should reimburse him for the cash he paid out, which amounted to $960, and she sent him at once $1,000 for that purpose, all of it having been sent to him before he had paid the entire amount. He gave no obligation for the payment of the Barrow note nor the amount due the State, but, on the contrary, in the deed taken by him for appellee, she expressly assumed to pay these amounts. The subsequent payments made by appellant will not raise a resulting trust. The payment of the Barrow note was entirely voluntary on his part, as would have been the payment to the State if made by him. "The trust must result, if at all, at the instant the deed is taken, and the legal title vests in the grantee. No oral agreements and no payments before or after the title is taken will create a resulting trust, unless the transaction is such at the moment the title passes that a trust will result from the transaction itself." (Parker v. Coop, 60 Texas, 118; Perry on Trusts, 133).

To saddle a trust on the land in favor of appellant, without the consent of appellee or even her knowledge, upon the facts upon which it is attempted to be founded, would be grossly inequitable. The assignment is overruled.

There is no conflict between the charge above quoted and any part of the charge of the court as claimed by the third assignment of error. This charge was, in substance, that if Erp made the cash payment for himself and not for Mrs. Meachem, intending at the time that he should have one-half of the land, then a resulting trust was created in his favor; but if he made the cash payment with his own money, but for the benefit of Mrs. Meachem, expecting to be reimbursed by her, there was no resulting trust. This was a correct statement of the law as applicable to the facts in evidence.

Evidence was introduced that appellee had given to appellant, $1,000, to pay for a house and lot in Raywood, in December, 1899; that the lot was purchased and deed made to appellee reciting a cash payment of $500 and note for $500, reserving a vendor's lien to secure the same, which note appellee refused to sign when it was sent to her. At some date afterwards, it is not shown when, appellant paid this $500, but appellee did not get a release of the vendor's lien until 1908, nor get possession of the deed, which was in appellant's possession and unrecorded, until 1904.

Appellant requested the court to instruct the jury not to regard this evidence, except for the purpose of impeaching appellant. The charge was refused, and the refusal is made the basis for the fourth assignment of error. The jury may very well have drawn the conclusion from the evidence on this point, that when appellant made

the cash payment on the land in controversy he had this $500 in his hands and made the payment out of this money, together with the money sent to him by appellee to pay for the land, and that, in fact, he paid none of his own money for the land. The court did not err in refusing to give the charge.

For the same reason the sixth and seventh assignments presenting objections to the admission of this evidence are overruled.

There was no error in refusing the special charge requested by appellant, as pointed out in the eighth assignment. There was no such relation of trust or confidence nor anything else disclosed by the evidence in the relation of the parties with reference to this transaction, as would relieve the claim of appellant against appellee for the amount paid by him, from the operation of the statute of limitation. If there was no resulting trust—and the jury under proper instructions and upon sufficient evidence, found there was none—if appellant had any cause of action on account of these payments against appellee, such cause of action as to such payments was barred in two years after it was made. There is nothing in the evidence to relieve his claim of this bar, which was a conclusive defense thereto. In addition to this, it appears that all of these payments were made without the knowledge of appellee, and certainly without any request or authority, expressed or implied, from her, and were purely voluntary. (22 Am. & Eng. Ency. of Law, sec. 537).

The ninth and tenth assignments of error present objections to the charge which are not tenable and do not require further discussion. They are sufficiently answered by what has been said with reference to the charge of the court, and that given at the request of appellee. The evidence does not tend to sustain the statement of appellant in the brief, that the land was sold on the credit of appellant, or that he assumed the payment of any part of the purchase money. The facts shown by his own testimony are insufficient to establish a resulting trust in the land.

We find no error in the record, and the judgment is affirmed.

*Affirmed.*

Writ of error refused.