### GRAVES v. GRAVES. (No. 1813.)

(Court of Civil Appeals of Texas. Amarillo.
May 18, 1921. Rehearing Denied
June 22, 1921.)

**1. Trusts ⚖️43(2)—Parol proof to show conveyance was in trust admissible under parol agreement.**

Proof of a trust agreement in reference to a conveyance is not objectionable as varying or contradicting the deed; such proof not proceeding upon the idea that the deed is not the conveyance it purports to be.

**2. Trusts ⚖️13 — Consideration need not be paid at time of execution of deed to create an express trust.**

The rule that the facts which show a trust in land, such as payment of consideration at the time of the execution of the deed, and that no prior or subsequent verbal agreement of the parties will create a trust, is true only of resulting trusts and is not true of an express trust.

**3. Trusts ⚖️43(1)—Evidence of transactions occurring after execution of deed held admissible to show a practical construction of an alleged parol trust agreement.**

In an action to have a trust declared in land, evidence that plaintiff went into possession of property as manager after the conveyance of land to defendant, that he had charge of the whole matter, paid out and borrowed money, paid the bills for the firm, composed of the defendant and himself, that the capital used by the firm was money borrowed by him and checked out by him, that certain notes introduced in evidence, signed in the firm name, were executed by him, and that it was agreed between the parties that the interest due the state upon certain sections of the ranch property should be paid by all of the firm, and a statement as to how he paid the interest, that he did not pay the taxes for certain years as the property was rendered in defendant's name, but that the taxes were paid by the firm's check, was admissible as tending to show a practical construction of the alleged trust agreement by the parties, and that the parties had recognized and acted upon such agreement.

**4. Trusts ⚖️44(1)—Parol trust established by testimony of one witness.**

As an abstract proposition it is no longer the rule that a parol trust cannot be established by the testimony of one witness.

**5. Limitation of actions ⚖️103(2) — Bar of four-year statute does not run against action to have trust declared in land until repudiation.**

The statute of limitation of four years does not constitute a bar to an action to have a trust declared in land until four years after the holder of the legal title repudiates the trust.

**6. Limitation of actions ⚖️103(2)—Action to have trust declared in land held not stale demand under ten-year statute.**

Where son did not bring action to have trust declared in land by reason of talks with his father with reference to his interest in the land, when father stated that he only refused to divide the land because he was not ready to quit and wanted to handle it as a whole, and did not repudiate the trust until just four years before the action, *held*, that the action was not a stale demand under the ten-year statute of limitations.

**7. Landlord and tenant ⚖️61—Evidence held to justify finding that plaintiff in action to have trust declared in land did not lease the land from defendant.**

In an action to have a trust declared in land, plaintiff claiming an undivided interest therein, evidence *held* to justify a finding that a lease of the land from defendant to plaintiff was but a lease of defendant's interest therein; defendant claiming that plaintiff was estopped to claim any interest in the land.

**8. Trusts ⚖️44(1)—Evidence held sufficient to justify finding of parol agreement to hold land in trust.**

In an action by a son against father to have a trust declared in land, plaintiff claiming an undivided interest therein, evidence *held* sufficient to support a verdict for plaintiff.

Appeal from District Court, Terry County; W. R. Spencer, Judge.

Action by R. L. Graves against R. C. Graves. Judgment for plaintiff, and defendant appeals. Affirmed.

Roscoe Wilson, of Lubbock, for appellant.
G. E. Lockhart, of Tahoka, for appellee.

HALL, J. Appellee, R. L. Graves, sued his father, the appellant, alleging in substance that early in 1910 and long prior and subsequent thereto the defendant R. C. Graves, and Roscoe Graves, plaintiff's brother, owned a small farm of 37.29 acres of land situated in Chaves county, N. M., known as the Graves tract, which was occupied by the defendant and his family as their home, and that to all intents and purposes the defendant, with plaintiff's said brother, used and handled the farm as if it were defendant's own property; that said Graves tract was rocky and except about 10 acres was not tillable; that it was difficult to irrigate and sufficient water for irrigation was not available; that at said time and long prior thereto plaintiff and his father, the defend-

ant, were joint owners of equal undivided parts of a tract of 58 acres of land, known as the Stone tract, which adjoined the Graves tract, and which by warranty deed dated October 15, 1908, was conveyed to plaintiff by J. Earle and John T. Stone; that it was understood between plaintiff and defendant that the former held the Stone tract in trust for the use and benefit of the defendant, to the extent of defendant's undivided one-half interest; that said tract was subject to an incumbrance of $2,700 and interest, evidenced by a note secured by a lien of date October 31, 1908, which plaintiff, joined by his wife, had made to J. Earle and John T. Stone; that it was distinctly understood and agreed by and between plaintiff and defendant at the time the Stone tract was bought that said note and mortgage were given in consideration of defendant's acquiring said undivided one-half interest in the land, and for other considerations said note should, as between them, be a joint equal debt, and should be paid by plaintiff and defendant, share and share alike; that the Stone tract was all fertile, bottom land, suitable for irrigation, well improved and in cultivation, with an excellent artesian well, sufficient to irrigate the whole 58 acres, and when used and handled in connection with and as a part of the Graves tract would add greatly to the value of the latter for farming purposes or for sale or exchange; that defendant, knowing this fact, insisted that plaintiff transfer the Stone tract to him, complaining that there was nothing of record or anything in writing to show that defendant owned any interest in the Stone tract; that to relieve said situation defendant proposed to plaintiff as follows: That plaintiff, joined by his wife, would execute and deliver to defendant a warranty deed, conveying the Stone tract; that defendant would hold the legal title thereby conveyed in trust for and to the use and benefit of plaintiff, to the full extent of plaintiff's undivided one-half interest; that the warranty deed should be understood and construed as aforesaid by and between them, both being jointly and equally liable for said note of $2,700; that, if plaintiff would authorize defendant to sell or exchange plaintiff's undivided half of the Stone tract, along with and as a part of the Graves tract, to the mutual advantage and profit of both and to plaintiff's brother, Roscoe Graves, then and in consideration therefor and for other considerations, plaintiff, in the event of such sale or exchange, should thereby become and be entitled to receive and should receive an undivided one-third of whatever money, notes, lands, or other property which might be acquired by such deal, plaintiff's one-third interest, however, to be subject to whatever debt, liens, or other conditions which should incumber the property received; that, if by the terms of any such deal defendant or plaintiff or said brother assumed such incumbrances, plain-

tiff's interest would be apportioned and set apart to him within a reasonable time thereafter; that plaintiff, having implicit trust and confidence in his father, accepted the proposition, and on February 28, 1910, joined by his wife, executed and delivered a conveyance of said 58 acres to defendant, even omitting therefrom, at defendant's request, a proviso to the effect that the grantee assumed the debt of $2,700 and interest; that the consideration of $3,000 expressed in said deed was nominal, and was meant and understood by and between the parties thereto that it should not be paid, but was inserted in the deed simply as a matter of form; that at the time of the execution of the deed plaintiff, for the consideration hereinbefore stated, authorized defendant to sell or exchange plaintiff's said undivided half interest in the Stone tract and in pursuance thereof defendant, in the latter part of the year 1912, acting for himself and Roscoe Graves, in that behalf, and as trustee and agent of plaintiff, as aforesaid, negotiated a deal with William R. Harris, then of Terry county, Tex., whereby both the Stone tract and the Graves tract were exchanged with the said Harris for nine sections of land, aggregating 7,560 acres, situated in Terry county, Tex., which land was conveyed to defendant by the said Harris; that by reason of the agreements and understanding between plaintiff and defendant, and by virtue of the execution and delivery of the deeds hereinbefore described, plaintiff is in fact and in equity an owner of one-third of 7,560 acres, subject to one-third of the indebtedness and interest owing the state of Texas, and defendant took the legal title to said 7,560 acres in Terry county in trust for and to the use and benefit of plaintiff, to the full extent of plaintiff's undivided one-third of said premises; that in the fall of 1912 defendant, with the knowledge and consent of plaintiff and said brother, entered into possession of said 7,560-acre ranch, by and through another party, under his direction and authority, and was to use and run the same as a cattle ranch and for farming purposes; that he was to make whatever additional improvements he should find necessary for said purpose; was to keep the taxes paid, and interest to the state of Texas; that until the fall of 1914, through a tenant residing on the premises, defendant ran about 400 head of cattle on said ranch and farmed about 150 acres, said use and occupation being of the value of $2,700; that he paid taxes in the sum of $300 and interest in the sum of $430, and added a well, windmill, and other minor improvements to the premises, at a cost of about $250; that under and by virtue of a parol agreement made and entered into for a good and a valuable consideration, in the fall of 1914, between plaintiff, defendant, and Roscoe Graves, plaintiff succeeded defendant in the possession and use of said ranch and farm,

using them until the fall of 1917, for the mutual benefit and profit of all three; that out of the common funds plaintiff paid by agreement the interest due the state for 1915 and 1916 in the sum of $505.44; that he also paid taxes due on the premises for said years; that the agreement was terminated in the fall of 1917 by final settlement among all the parties; that on August 6, 1917, Roscoe Graves by his certain quitclaim deed of said date executed and delivered to the defendant released to the defendant, R. C. Graves, his interest in said ranch, and that since the fall of 1917 plaintiff and defendant alternately have occupied said ranch until February 10, 1919; that plaintiff was entitled to remain in possession of his said undivided one-third of the premises on and after said date; that defendant has occupied the same exclusively ever since; that on said date he unlawfully entered upon and dispossessed said plaintiff of his said undivided one-third, and still withholds the same, paying all taxes and interest thereon. Plaintiff prayed for judgment establishing his said undivided one-third interest in said nine sections of land and for partition.

The defendant, R. C. Graves, answered by general demurrer and specially denied the parol agreement, and pleaded the two, three, four, five, and ten year statutes of limitation.

By a supplemental petition plaintiff pleaded among other things, that defendant has at all times since the purchase of the property from W. R. Harris understood and known that plaintiff was claiming an interest in the land in Terry county, Tex., which interest has at all times been recognized by defendant, wherefore the statutes of limitations pleaded by defendant do not apply; that it is not true, as alleged by defendant, that plaintiff expressly recognized that defendant had the fee-simple title to said ranch, but says that the plaintiff did accept a written contract of sale of all cattle on the Graves ranch in the year 1917, and in said contract it was stipulated and provided that plaintiff was to pay to the defendant the sum of $100 per section for the nine sections of land, but it was known and understood at the time that plaintiff owned a one-third interest in the land, the said Roscoe Graves having theretofore conveyed all his interest to defendant; that it was intended by said instrument to give or grant a release on his interest in said lands, but that the plaintiff was to pay the defendant said sum for the interest that he, the defendant, owned in said lands at the time said contract was made; that, when said contract was abandoned in 1919, plaintiff called upon defendant for a division and partition of the land, but defendant advised plaintiff that he had stock on the ranch and was not at that time ready for such division, and told plaintiff that he had held the premises in his name so long that he thought that plaintiff had lost his interest

232 S.W.—35

in the same, and from said date defendant has refused to make a division of the property.

The case was submitted to a jury upon special issues. The jury found: (1) That it was the mutual understanding and agreement of plaintiff and defendant that the deed from plaintiff and his wife to defendant, dated February 28, 1910, should convey whatever interest, if any, plaintiff had in the 58 acres in trust, to be traded off by defendant, with the understanding that plaintiff would receive one-third of whatever was received for the 58 acres and the original Graves tract; (2) that defendant repudiated the trust agreement between himself and plaintiff; (3) that said repudiation was made in February, 1919; (4) that such repudiation was brought to the knowledge of plaintiff in February, 1919. The court submitted several special issues requested by the appellant, and in reply thereto the jury found as follows:

"Special issue No. 2: Plaintiff paid part of the consideration for the Stone tract at the time he purchased the same and it was deeded to him.

"Special issue No. 3: That the defendant and Roscoe Graves did not have open, adverse, and peaceable possession of the Stone tract from February 28, 1910, to the time it was traded to Harris in 1912, and that they have not been in open, adverse, and peaceable possession of the ranch in Terry county, and claiming to own the same in fee simple since it was acquired from Harris.

"Special issue No. 4: The defendant and those whose estate he holds have not had peaceable and adverse possession of the land in Terry county described in plaintiff's petition under title or color of title for a period of more than three years before the commencement of the suit.

"Special issue No. 5: The defendant and those whose estate he has have not held peaceable, continuous, exclusive, adverse possession, cultivating and using the land in Terry county described in plaintiff's petition, or enjoying the same and paying all taxes thereon, for more than five years before the commencement of the suit, claiming said land under deed or deeds duly recorded.

"Special issue No. 6: Plaintiff did assert his claim to the land in Terry county within four years after it accrued and within four years after the trade with Harris."

Based upon this verdict, the court rendered judgment for the appellee.

[1] Under the first assignment appellant contends that the court erred in overruling his general demurrer to plaintiff's petition, because it shows that it is an action to ingraft a parol trust upon a deed absolute on its face and contains no allegation of fraud in its execution. This question was considered in Sullivan v. Fant, 51 Tex. Civ. App. 6, 110 S. W. 507, in which James, C. J., said:

"The fifty-first assignment relates to the confirmation deed; it being claimed that it was not

capable of being varied or contradicted in its terms and effect by parol evidence as to the lands conveyed thereby, including that conveyed afterwards to D. J. Sullivan. The proposition advanced in the brief is as follows: 'The purpose and intent of the grantor, as expressed in the deed of confirmation, were contained in said instrument, in contractual stipulations and recitals, and such contractual recitals and stipulations could not be altered or varied by parol testimony; hence the deed, by virtue of these recitals and stipulations, vested an absolute title in D. Sullivan and in D. J. Sullivan, the grantee of D. Sullivan; that the legal effect of said instrument was to vest in D. Sullivan and his grantees a perfect legal title, and, as the legal effect of the deed could not be varied by parol testimony, the court erred in holding that D. Sullivan and D. J. Sullivan took no title, and erred in divesting them of the title to the property in controversy.' The fallacy of the proposition is in the fact that proof of a trust agreement in reference to a conveyance does not vary or contradict the deed. Such proof does not proceed upon the idea that the deed was not the conveyance it purports to be. It concedes that the title passed by it, and that the deed has effect. A deed cannot be set aside or reformed except upon allegations of fraud, mistake, and the like, but these allegations are not essential in order to charge the grantee in a deed with a trust in the lands. It is enough for that purpose to allege and prove the understanding and the facts upon which the grantee received the conveyance. As stated in Clark v. Haney, 62 Tex. 514, 50 Am. Rep. 536: 'The present case is that of an agreement by the grantee, made before conveyance, and as an inducement to it, to hold the lands deed in trust for certain purposes, and to reconvey when the trust was fully executed. Relying upon his faithful performance of the trust and to enable him to do so, the deed of conveyance was made, with the distinct understanding that it was not to be absolute, but in trust for the purposes agreed on by the parties. To allow the grantee to repudiate the trust, after he had obtained the apparent title and gone into possession, to appropriate to himself the whole benefit of the property, would be to sanction a fraud and a wrong which it is the duty of a court of equity to prevent or remedy.' In Smith v. Eckford (Tex. Sup.) 18 S. W. 210, this language is found: 'The real consideration of the transfer and the intention of the parties may be developed outside of the terms of the written instrument, upon allegations of the true intention and consideration, without, we think, the necessity of alleging, in cases like the present (as contended by appellants' counsel must be done), either fraud or mistake in procuring the conveyance in the first instance. The fraud arises from the subsequent perversion of the trust.' There were no contractual matters in the deed in question, which the trust agreement would be deemed to vary. The deed contains covenants and recitations it is true, but none that would not ordinarily be expected to occur in an instrument of its nature. The deed was nothing more than a conveyance, with recitations and covenants appropriate and ordinarily incidental to the vesting of full apparent title, and was not such an instrument as upon its face bars all right of the grantor to claim that it was obtained in subordination to a trust understanding."

This question was considered by Fly, C. J., in Robinson v. Faville, 213 S. W. 316, in which all the decisions in this state bearing upon it were cited, and many of them discussed, and the following conclusion reached:

"It is established by a long and unbroken line of decisions in Texas that an express or direct trust may be ingrafted on a deed conveying absolute title by parol testimony. These decisions range from James v. Fulcord, 5 Tex. 512, 55 Am. Dec. 743, down to the present time, and a full list of such decisions are collected in Michie's 16 Enc. Dig. Tex. Rep. p. 861. The ingrafting of such trust upon a deed absolute upon its face would not have the effect of destroying the deed, and therefore would not cause a rescission of such deed and accomplish indirectly what could not under the allegations be accomplished in the effort to obtain a cancellation of the deed. As hereinbefore held, a court of equity could not give relief to appellants by a rescission of the contract of sale under their allegations, but, as the allegations show that the deed was executed and delivered on the faith of a promise afterwards broken, equity will grant relief, by ingrafting a trust on the deed. To accomplish this it was not required that fraud should be alleged."

The recital of the considerations in the instrument in the instant case are not contractual. They simply recite the payment of various sums in cash.

[2] It is insisted under the second assignment that, in order to ingraft a parol trust upon a deed absolute upon its face, it must be shown that the consideration was paid at the time of the execution of the deed. To sustain this proposition appellant cites a number of authorities which upon examination are found to be cases involving implied trusts. If the agreement between the parties is such as to create what is known as an express trust, they may make the consideration payable upon any terms.

"The rule invoked by appellee to the effect that the facts which show a trust in land must exist at the instant the title passes, and that no prior or subsequent verbal agreements of the parties will create a trust, is true only of resulting trusts, and most of the authorities cited are of that character. It is not at all true that reference to parol express trusts, for they invariably grow out of prior oral agreements and have always been sustained when the facts warrant it. See Gardner v. Randell, 70 Tex. 453, 7 S. W. 781; Lucia v. Adams, 36 Tex. Civ. App. 454, 82 S. W. 335; Stafford v. Stafford, 29 Tex. Civ. App. 73, 71 S. W. 984; Id., 96 Tex. 106, 70 S. W. 75." Henderson v. Rushing, 47 Tex. Civ. App. 485, 105 S. W. 840; Erp v. Meachem, 61 Tex. Civ. App. 71, 130 S. W. 230.

The proposition advanced under the third assignment that recitals in a deed cannot be contradicted by parol evidence of the parties to the deed, or those holding under

them, must, under the authorities above cited, be overruled. The evidence admitted to prove the terms of the agreement between the parties and which constitute a trust do not contradict any of the recitals in the instrument.

[3] Under the fourth assignment appellant insists that evidence of transactions occurring long after the execution of a deed are not admissible to ingraft a parol trust upon it. The evidence objected to is that of appellee, to the effect that, after the property owned by the parties near Roswell had been exchanged for the ranch in Terry county, he went into possession of the ranch property as manager; that he had charge of the whole matter, paid out and borrowed money, paid the bills for the firm of R. C. Graves & Son; that the capital used by the firm was money borrowed by him and checked out by him; that certain notes introduced in evidence, signed in the firm name, were executed by him; and that it was agreed between the parties that the interest due the state upon certain sections of the ranch property should be paid by all of the firm and a statement as to how he paid the interest. He further stated that he did not pay the taxes for certain years, as the property was rendered in his father's name, but that the taxes were paid by the firm's check. It is sufficient to say that this testimony was not admitted for the purpose of establishing a trust. That had been testified to by the appellee, and this evidence was admissible to show that by subsequent conduct of the parties they had recognized and acted upon the agreement previously made. It tended to show a practical construction of the trust agreement by the parties and subsequent acts recognizing and putting it into effect.

[4] The fifth, sixth, seventh, and eighth assignments are based upon the court's refusal to give the appellant's special charge No. 1, which was a peremptory instruction to find for appellant. Under these assignments it is insisted: (1) The testimony of one witness, without proof of corroborating circumstances, is insufficient to ingraft a parol trust on a deed absolute on its face; (2) the equitable interest in land which requires proof to establish it is barred in four years after the right accrued; (3) more than ten years having elapsed, appellee's claim is a stale demand and barred by the ten-year statute of limitation; (4) the leasing of the land by appellee from appellant was a recognition of appellant's title and appellee is estopped from asserting a parol trust upon said land. As an abstract proposition it is no longer the rule in this state that a parol trust cannot be established by the testimony of one witness. Allen v. Williams, 218 S. W. 135; Hall v. Hall, 198 S. W. 636; Ellerd v. Ellison, 165 S. W. 878; Mortgage Co. v. Pace, 23 Tex. Civ. App. 222, 56 S. W. 393. If

corroborating circumstances are necessary, they are found in abundance in this record. In nearly every instance where appellee testified as to the payment of money for lands or improvements, and in the negotiation of loans for the benefit of the firm, and payment of the debts of the firm, as well as for his property which was conveyed to his father, he produced checks, notes, receipts, and other written evidence corroborating his verbal statements. It is true his testimony is sharply controverted, but the finding of the jury is amply sustained by the record.

[5, 6] In reply to the second contention it may be said that the statute of limitations of four years does not constitute a bar because appellant did not repudiate the trust until the month of February, 1919. Appellee testified:

"My father talked with me with reference to my interest in the land [the ranch] during that time. I talked with him on a number of occasions at different times, and the reason he gave me for not wanted to divide the land was that he was not ready to quit and wanted to handle it as a whole. I requested him the first time to make a division and partition of the land in February, 1919, when we settled up, and he then stated that I did not have any interest; that he had held it so long he thought I had lost out. He had never before that denied my interest."

For this reason the rule of stale demand has no application.

[7] Appellee testified upon the issue of estoppel, based upon the fact that he had leased the premises in 1917 from appellant, as follows:

"I remember in January, 1917, when I purchased the cattle from my father, I had a written contract with him. I leased his interest in the nine sections. The papers handed me by counsel is a copy of that instrument. That is my signature signed to it."

The lease contract between the parties was introduced showing that appellant had leased to appellee nine sections of land in Terry county, known as the Graves pasture, at a rental value of $100 per section. Appellee further testified with reference to it:

"All of the nine sections in the Graves pasture were not Graves' land. Two sections were outside the pasture, and we made an exchange on them. I never received a lease such as mentioned in this contract. * * * Q. You went into possession of the land? A. I was already there. I executed the note and mortgage mentioned in the contract. I never paid the $100 lease per section specified in the contract. I held possession of the land under the contract until 1919."

The issue of estoppel was not submitted to the jury, and appellee's evidence is sufficient to sustain an implied finding by the court

that he leased only the appellant's interest in the lands included within the ranch.

[8] Assignments numbered 9 to 15, inclusive, attack the finding of the jury as unsupported by the evidence. The substance of appellee's testimony material to the issues submitted is that he had resided in Terry county, Tex., since January 1, 1915; that prior to that date and since the year 1903 he lived at Roswell, N. M., except two years during which he lived at El Paso. He states that during his residence at Roswell he looked upon his father as his adviser in business matters; that his father lived upon a farm near the northeast corner of the city of Roswell consisting of 37 acres, in which Roscoe T. Graves, brother of the witness, was supposed to own an interest. We quote:

"When we moved to New Mexico we invested everything we had in this land and took the deed in Papa's and Roscoe's names. Roscoe is three years my senior. In 1908 the firm R. C. Graves & Son, was doing business in Chaves county, N. M. This tract of land was known as the Graves tract. The Graves tract was improved with a house located some 75 feet from the bank of the Barenda river. All of the tract could be ploughed, but it was rough, and only a small portion of it could be irrigated. The balance was planted in alfalfa, which sometimes made enough that it could be cut and others you could not cut it. Only that portion of it was tillable which was under irrigation ditches, comprising some 10 or 15 acres. The improvements in 1908 consisted of an artesian well, which furnished water for irrigation, a four-room adobe house, brick-veneered. The house was later improved by the addition of a couple of rooms, porches, and was faced with cement. The Stone tract lies immediately east of this 37½-acre tract, known as the Graves tract. At the time the Stone tract was purchased there were no improvements on it. I had the well dug there right after it was purchased in 1908. I purchased the Stone tract, which consisted of 58 acres lying east of and adjoining the 37½ acres described as the Graves place. I purchased the Stone tract from J. Earle Stone and John T. Stone. I gave them $3,800 for it, $1,000 cash and a note and mortgage for $22,770. I got a receipt for the money. I had a well put down; had it plowed up and leveled and put in a state of cultivation. I had it surveyed in order to lay the irrigation ditches. W. A. Wilson did the surveying, and I paid him $40 for his services. He charged $80 for the work, and my father paid the other part. My father had an interest in this Stone tract. I found the Stone tract could be bought down right, and I went to Father and discussed the matter with him that this Stone tract would add a great deal to the value of the land he already had. I then closed the deal; our agreement being that he would take a half interest in the Stone tract. It was an extremely fertile place, all good land, much better than any land surrounding it. After the ditches had been laid out we had a Mexican to break it up, level it down, and dig the ditches. I was there with him when it was done. I had a well drilled on the place by Elmer Starnes. I paid for the drilling of the well; I have the check for $400. I bought the casing for the well and have the check for $352.88, and another one for $118.25 more, expended in connection with the well. We had an arrangement at the time the Stone tract was purchased, whereby I was to pay the original consideration. October 30, 1909, I paid the first year's interest on the note and mortgage to Stone Bros. I have that check, $221.60. The exact manner in which I finally paid the $1,000 cash consideration for the purchase of the Stone tract was that my father and I went to the bank December 27, 1910, and borrowed $5,000. We took up the note out of that, and the balance of $3,062.50. I turned over to my father. I have the deposit slip showing where we borrowed that $5,000. After we took up the note there were still $3,062.50 to my credit. My father checked out $86 at one time and $1,599 at another time, signing my name, by him, for some cattle he bought, and then I gave him a check for the balance. I have all these checks. From 1908 to 1910 I had an interest in the firm business of R. C. Graves & Son, but only in the live stock. My brother and I had a bunch of cattle together. I don't own any interest in that partnership now. I took an interest in the firm at the time we borrowed the $5,000 I have just testified about and invested the proceeds in the cattle. I was interested in the firm until 1917. I came to Terry county in the last of December, or the 1st days of January, 1915, and moved my family out on the ranch and went to work. My father approached me between the years of 1908 and 1912 with reference to this land, the Stone tract, being in my name. I think I had deeded a part of my interest to my wife at that time and he did not like that very much. He was figuring on trading his land, the Graves place, at that time. It was hard to work and an undesirable piece of property by itself, and we just bunched the two places together to get it under one head so we could trade it off or sell it. I made a deed to the Stone tract at my father's request, with the agreement and understanding that he was to take the title and hold it just as I had been holding it before, for the benefit of us both. It was conveyed to him so it could be traded off or sold in connection with the place he had. The Stone tract was a much better piece of land than the Graves tract, and the two places, taken together, could be sold to a much better advantage than either tract standing alone. I had a conversation with my father prior to the time the trade was made with Harris, in which we agreed that by reason of my putting the Stone tract in on the deal the three of us became equally interested in the land over here in Terry county. The consideration expressed in the deed from Harris is $24,000. The real consideration was the trade of the property here in New Mexico for the property in Terry county, Harris assuming the indebtedness against the New Mexico property, and we to assume the state debt against the property over here. The consideration for the deed from Harris was the Stone tract and the Graves tract in New Mexico. After I came to Terry county, I went into possession of the Harris property. I had something to do at that time with the firm of R. C. Graves & Son. I guess

I was what you would call manager of the ranch down here. I had charge of the work; paid out money; borrowed money and paid the bills of the firm. I lived down there on the place. The capital used by R. C. Graves & Son was borrowed money lots of the time. I borrowed money; wrote checks. I have some of the notes. Here is one for $3,150 and another for $500.25, signed, 'R. C. Graves & Son, R. L. Graves, R. C. Graves.' My father talked with me with reference to my interest in this land during that time. I talked with him on a number of occasions at different times, and the reason he gave for not wanting to divide the land was that he was not ready to quit and wanted to handle it as a whole. I requested him the first time to make a division and partition of the land in February, 1919, when we settled up, and he then stated that I did not have any interest; that he had held it so long he thought I had lost out. He had never before that denied my interest."

On cross-examination he testified:

"I think that the $1,000 paid on the Stone tract in 1908 was paid by R. C. Graves & Son. I was not a member of the firm at that time. My father and myself executed the $5,000 note to the bank at Roswell December 27, 1910. A part of that note was for the purpose of purchasing cattle, and a part of it was used in the purchase of cattle from a man by the name of Durrell. That note was paid by the firm of R. C. Graves & Son after the cattle were sold. I owned an interest in the cattle that were sold. The check I gave to my father for the balance was reinvested in cattle. He went down in the Pecos county and bought them from Durrell. I leased his interest in the land in January, 1917. The paper handed me is a copy of that instrument. I never executed the lease mentioned in this instrument. I did execute the notes and the mortgage. I do not think that in 1910, the time I made this deed to my father, that he could have possibly put as much as $2,400 in improvements on this land. I will state that in 1910 I was able to pay my own way and furnish my own living, and I did so. After I came up here to Terry county, I paid the bills for the ranch, part of them, out of the partnership funds and part of them out of my own money and gave checks. I have here the checks for some of the bills that I paid. I had several conversations with my father with reference to the Harris deal, and I had the agreement with him that I testified about that I was to have an equal interest in the land. I made a trip in connection with that deal. Mr. Harris made a mistake in his deed to father and I secured a correction deed. When my father and brother were arrested over in New Mexico, they arrested me with them. I was never indicted. Together with Judge Gatewood, I represented my father in the Supreme Court. He was first convicted in the district court, but in the Supreme Court the case was reversed and dismissed on account of insufficient evidence. I moved away from Roswell because my father and my brother were always mixed up in the court over there."

W. W. Gatewood testified:

"I have been a practicing attorney until three years ago, when I retired on account of my health. I was practicing in 1908, 1909, and 1910, and along there. The plaintiff, R. L. Graves, is my son-in-law. He was my partner in the law business at that time. He got one-fourth of all the fees, besides getting all the fees from the practice in the justice court. Our firm made about $15,000 a year, during those years. I would say that was the minimum. I knew the location of the Stone tract. It was reasonably worth on January 1, 1910, $250 or $300 an acre."

We think the evidence is sufficient to support every finding of the jury. The remaining assignments are therefore overruled, and the judgment is affirmed.

