Hemphill, Ch. J.
The point relied upon to sustain the exception to the petition is tiiat there is no specific averment that the demand was presented to the defendant and disallowed, as is required by tire 17th section of the act of 1840 regulating proceedings in the Probate Courts. (Dig., art. 1011.1 This section declares that no bearer of a claim for money against a succession administered by an executor or administrator shall commence an action against such succession before presenting his claim to the executor or administrator. By the succeeding sections it is provided tiiat if the claim be allowed it shall be ranked among the acknowledged debts of the succession; if disapproved, suit may be brought in the court of competent jurisdiction for its establishment. .The appellant contends tiiat this is a claim for money in the import of the phrase as employed in the law; tiiat the alleged injury can be compensated only in money; that the terms embrace all claims for money, whether they be liquidated or unliquidated.
The provision was doubtless adopted from the Louisiana Code, which liad previously been in force; and had the substance of all the articles of the code in the subject-matter been incorporated into the statute there would be no difficulty in deciding the point raised by the exception. The 984th article declares that no heai’er óf a claim for money against a succession shall commence an action before presenting his claim to the curator. This embraces liquidated claims only; for a subsequent article provides that if the claim be not. liquidated, or if tlie curator refuse to approve it, suit may he brought, &c. (Art. 986, 19 La. R., 444.) Mo provision of the statute of ÍS40, in express terms or by necessary implication, restricts the requisition to liquidated claims, and the question arises whether, from the reason of the rale, it is not confined to such claims as though not liquidated in legal acceptation, yet are susceptible on well-established principles of law of being reduced to a specific and definite sum, and which therefore, beyond all question, the administrator would bo justified in approving and allowing.
The object, of the provision is not only to notify the administrator of the. amount of claims against the succession, but to relieve the estate from *222 costs, which might become oppressive were every creditor at his caprice at liberty to sue for his claim without ascertaining whelher it would be allowed or rejected. It is intended for the benefit of the estate; but where would be. the advantage of presenting a claim for uncertain damages, the amount of which may, iE tliej- be of an exemplary character, depend oil the discretion of the jury, and if they be compensatory, may be regulated by principles of law not well settled, or may b? for losses of a consequential nature, the extent of which cannot be always ascertained by fixed and invariable rules for their estimate or calculation.
The measure of damages in breaches of warranty of real property where tlie common-law prevails seems now to be ascertained with some degree of certainty, though (here is still some fluctuation of opinion. (Sedgw., chap., 0.) The general rule is that ill ease of eviction the plaintiff is allowed to recover the consideration money paid with interest commensurate with the legal claim to mesne profit, being the term allowed by the statute of limitations and ihe costs of the eviction suit. (3 Caines R., p. 111; 13 Johns. R., 50; 14 Id., 89; 2 Wend. R., 399.)
But tlie damages on breaches of warranty of personal chattels arc not measured witli tlie like degree of certainty. In warranties for tille, when tlie article is recovered from the vendee by a paramount title, in some cases the vendee lias recovered from the vendor tlie amount of the judgment against himself with the costs. (1 Johns. R., 517.) In others, the measure of the vendee’s damages has been the price of the article, and interest and costs of the suit of eviction. (5 Wend. R., 535; Sedgw., 299.) These doctrines, in cases at common law, are not referred to as affecting this controversy, or for the purpose of establishing rules of decision in future eases. They are commented on for the purpose of showing that even in eases where the damages are not of a vindictive character, yet they may be very uncertain, and in such case if would be of little avail to present (be, claim to the administrator; for most generally, to avoid responsibility, he would not discharge such demand without the sanction of a judicial determination.
If the amount of damages in this case depended on the rules of the common law, it is obvious from the assignments of error and the difference between the charges as given and as refused that the law of the case is not well settled.
But another consideration will show more forcibly that the amount of damages for which the esiate was liable was unknown and could not be ascertained by the administrator, and that therefore it would be fruitless to request their pay-nient without the authority of a decree to that effect. The rules of the system oE jurisprudence controlling this case were not, it is believed, referred to in t.he court below, nor were they cited in argument in this court. The laws of Spain were in force at the execution of tlie contract in 1S37; and these laws seem not to have entered into the contemplation of the parties to this suit, and the true measure of damages being, therefore, unknown to the administrator, he would not, most probably, act in the premises until the amount was legally ascertained. But ¡E the rules of the laws of Spain had not been unknown t.'o the administrator, (and perhaps that is the legal presumption,) yet they are so vague that lie might well decline to act on his own judgment and authority. The general rule (Partidas, 5 Tit..; 5 L., 32) is that the vendor, having received due notice of tlie suit for eviction, is bound in case of judgment against the vendee to return the price paid for the thing and pay all tlie losses’’and damages consequent thereupon; and if the vend'or had bound himself to warrant in a penalty double tlie amount, then this double amount ought to be estimated according to the value of the property, though that may have increased, and not according to the price paid for it. (Partidas, 5 Tit., 5 L., 32; White’s Recop., 195.)
This rule leaves a wide scope to judicial discretion. ■ What losses may be included under tlie terms of tlie law; whether they shall be alone immediate and direct or remote and consequential; whether they be such as were *223 in the contemplation of the parties at the execution of the contract, or he such as actually result from tiie breach; whether they include only diminution of profits or also loss of the hopes of gain, is not obvious from the terms or import, of the law; and an administrator, if he had notice of the law at all, would not feel secure in settling according to its terms until they had received .judicial conr-truolion.
The consideration of this rule will be resumed under the third assignment, and we now proceed to show that if demand were necessary, it inis been averred, though nor. formally, in tiie petition. It is stated in substance, that neither did the said Jacob in his lifetime nor lias the appellant since his death warranted the said slave according to the covenant of the said Jacob, but that judgment lias been recovered against tiie plaintiff for the said slave and for damages; and that the appellant lias not performed and kept the promise and agreement of the said Jacob, though lie was duly thereunto requested on the 1st day of March, in the year one tlionsand eight hundred and forty-two. Now, as tiie unmeaning fictions of the common law are abrogated, and facts only are to be alleged in (lie pleadings, tiie averment must be taken as alleging tiie fact that the appellant was requested to make good the warranty and that he refused. This refusal may be indorsed on the claim or it may be proven by evidence aliunde; and, in point of fact, tiie allegations were sustained by the evidence, for this shows that an order for tiie payment of the. judgment against the plaintiff was presented to and not accepted by the appellant.
But the facts averred in the petition, and they were proven at tiie trial, show that tiie appellant was privy to tiie record of the judgment, against tiie plaintiff; ilmt his liability lo respond ía damages was thereby lixed; and that there was therefore no necessity to apprise him of a fact of which lie had already received authentic information, and from tiie effects of which he could not escape.
By t-Iic laws of Spain, in order to fix the liability of the vendor, he’ must in due lime be notified of the commencement of the suit against the vendee; and if lie cannot or will not defend him, then he will ho bound to restore tiie price paid for tiie thing and for damages. (Partidas, 5 Tit., 5 L., 32.) And by law 33, same book and title, it is declared that if the seller appear- and defend tiie suit, the judgment would go against him and t ho buyer may depart in peace; hut if the seller do not appear, then judgment will be given against tiie vendee, his right to sue (lie seller in warranty being unimpaired. In. this case tiie vendor in hislifetimeand theappellanf. after Ids death appeared in defense of tiie suit against the vendee; and, if the laws of Spain had continued in full force, judgment might at once have been rendered against the appellant and not against the vendee, the present plaintiff, though the more correct practice would be that pursued in Louisiana, viz, on the rendition of judgment against the vendee, judgment should also have been entered in his favor against tiie appellant for such amount, as would be in accordance with law, and the proceeding might have been carried further; if due notice had been given to the parties, judgment might have been rendered for tiie warrantor against his vendor, and in like manner affecting the parties through whom the title lias been transmitted, until the primary vendor is reached-and tiie entire mass of litigation bo thus adjudged in one controversy. And it seems to me beyond doiibt that under our liberal system of procedure our courts having full legal and equitable jurisdiction, all parties wiiose interests may bo affected by the decisions may appear voluntarily or be cited, and that the respective rights of each may be adjudicated and determined in one and tiie same proceeding. In Legg v. McNeill (2 Tex. R., 423) it was held that a third person, having a direct interest in a pending suit, may come in as intervenor or warrantor to protect that interest; and it was said that in chancery all parties having a direct interest, in the subject-matter in controversy can .lie made pardos either as corn-complainants or defendants, and eacli may set up his own interest in *224 opposition to others and claim a decree disposing oí such interest. In Davis v. Willboune (1 Hill, So. Ca. R., 27) it w;is held that the doctrine oí voucher was strictly and technically applicable only to real actions, (Co. Litt., 101, B.,) but the principle,'so far as it is applicable, has been so long applied in cases involving the rights of personal property that tlie judge delivering the opinion had never before heard it called in question, and it ivas said that'if one he sued for a chattel and gives notice to his warrantor to come in and defend the title, the notice makes the warrantor a privy to the record, and lie is bound by it to the extent to which his rights have been tried and adjudged. And in'an action against'him at the suit of the warrantee, in addition to the record, all that is necessary to be shown is that the title was in issue and judgment given upon it.
Now, if under the law as existing at the time of the contract, or under our present, system of procedure, judgment might have been rendered against the appellant, or if under the common law his liability, on receiving notice of the suit against the vendee, though not its amount, was fixed by the judgment, the administrator need not be apprised of a fact of which he was equally cognizant and by which he was equally bound with the vendee, and no default could have been imputed to the latter had it been proved that he totally failed to notify the administrator of his claim. We are therefore of opinion that there was no error in overruling the demurrer to the petition.
Tlie second ground for reversal is that there was error in reinstating the cause after its dismissal for tlie want of prosecution. The Constitution declares that no judge shall sit in anj case where he may have been of counsel in the cause. This prohibition does not divest tlie court of jurisdiction, but personally incapacitates the judge from sitting for the purpose of hearing and determining the cause on its merits, or from making any order which would prevent the cause from being heard and determined on its merits; and if such should improvidently issue, there can be no doubt that the same judge or any other presiding in the same court would have the power, on suggestion of tlie facts and .on motion, to set it aside and reinstate tlie cause in the condition in which it had been found prior to tlie illegal and improvident act of the court.
In Joslin v. Coffin, (5 How. Miss. R., 539,) where a regular term of the court failed in consequence of tlie death of tlie cleric, and for that reason the defendant did not attend at said term, and being out of tlie county had no notice of a special term at which his cause was tried, and in consequence thereof failed to make his defense, it was held on a bill and allegation of merits that the,chancellor properly awarded a new trial.
The decision was founded on the universal principle that no man should be bound by a judgment where he lias had no notice of the proceedings uor an opportunity to defend himself. This principle applics-with great force in the case under review. In the case cited it was contended that in contemplation of law the defendant was presumed to have notice of the special term, but such presumption has no foundation in this ease. The plaintiff could not have supposed or anticipated that his cause would be dismissed for want of prosecution when there was no competent court before which it could be heard or determined. The judge had no authority in law to issue bis original order, but yet he had power to correct his own mistake and revoke his void orders, and there was no error in his resuscitating tlie cause as it originally stood on the docket.
The third assignment is that there was error in the charge of (lie judge as given and in the refusal of the instructions as asked on tlie subject of damages. Tlie judge charged that the jury might find as the damages of tlie plain I IT Ihe price that he had paid for the negro, with interest from the date 'of tlie purchase and the costs of the eviction suit, and he refused to *225 charge the jury that the measure of the damages was the value of tlie property at the date of the breach of warranty.
The rule for the measure of damages under the Spanish code in case of eviction is, as previously stated, the return of the price and payment of the losses and damages sustained by the vendee. This is the rule also of the civil law. In Domat, vol. 1st, p. 232, sec. 382, it is said that if tlie sale be dissolved by eviction, the seller is bound to restore the price and indemnify the buyer for the damages which ho may sustain thereby; and in the preceding sections it. is laid down that if the thing sold be in the same condition and value as at tlie time of sale, then the seller shall restore only the price, the charges of drawing up the contract, those of taking possession, and malee good the other damages, if any, as if tlie purchaser liad paid a line of alienation; and on the other hand, if the thing be diminished in value and is worthless than the buyer paid for it, he can recover only the present value of the thing at the time of the eviction, or if it be worth more, ho shall recover its augmented value. In Cooper’s Justinian, p. 615, the rule is expressed in similar terms, and the subject is discussed with the vigor, the ability, and the research characteristic of the author. The only comment on tito laws of Spain in the reach of the court is tlie work of Aso and Manuel, incorporated in the first volume of White’s Recopilación. This treats of the subject with the most unsatisfactory brevity. The law in the Partidas is referred to, and it is stated that if the vendor, being cited in warranty, do not assist tlie purchaser in his defense, lie shall be' responsible for tlie costs of the suit and for tlie return of the price paid, tlie damages which may result to him being estimated. Numerous eases might he cited from tlie reports of decisions in Louisiana, hut tlie contracts anti obligations of the parties in all of them (with one exception) to which I liave had reference, originated under and were governed by the provisions of the one or tlie other of the special codes of that State. Tlie only exception is the case of Edwards v. Martin, (19 La. R., 284.) In that case tlie plaintiffs were colored persons, children of a colored woman named Polly Edwards, who was sold as a slave tlie 24th April, 1802, by Joseph Andrus to Andre Martin, the ancestor of defendants, for six hundred and twenty-five dollars. The plaintiffs were all born after this sale and while their mother washeld as a slave .by Martin. He afterwards sold her to one Foreman, against whom she asserted her freedom, alleging' that she was free-horn. She liad judgment, declaring that she was free, and that she was born free. Foreman had judgment over against Martin on his warranty for six hundred and sixty-five dollars, who had a like judgment against Andrus, and who had also judgment against the widow and heirs of Ed. King. Martin being now sued by the children of Polly Edwards for their freedom, called Andrus in warranty as tlie vendor of llieir mother, and judgment was rendered declaring them free, and assessing their value as slaves at $4,S00. and tlie heirs of the vendee Martin had judgment for that sum against Andrus, tlie vendor. The judgment was so amended h.v the Supreme Court as to allow to the heirs of Martin, instead of $-1,800, ouiy the sum of $625, the price paid for the mother of the said children. Tlie cause was twice elaborately argued. The rule in Partidas was cited, and the principles of tlie Roman laws wore adduced, but there was no reference to any Spanish commentator on tlie subject.
In their opinion tlie court say that the Spanish writers whom they have, been able to consult throw but little light on tlie subject, but that Gregorio Lopez, in his comments on tlie law, points to tlie Roman Digest as the source from which it had been drawn. Two contradictory laws from the Digest were cited; from one of which it appears that the vendor, on eviction, would not be responsible for the child of which a female slave, was pregnant at the time of the sale; and the other declared in effect that he should respond in damages as well for tlie children as for tlie mother whom lie had sold, on the ground that he was bound not only to warrant the thing- sold, but sill tilings which by it could be acquired. And tiie difference in the laws was said to be *226 owing to the two actions contemplated by them; that the Roman law gave two remedies, the actio ex empto and (lie actio de evictione; that by the latter, the person evicted was entitled to recover from his vendor double the price he paid, and that the former could be brought in all eases to recover any damages praster pretium, whether the eviction was of the thing itself or of anything proceeding from it. That the general rale of the Roman law, subject to some restrictions, was that the purchaser must be indemnified to the extent of the interest lie had in not being evicted, and that to put an end to all doubts on the subject-, Justinian ordered that in all cases where the agreement had for its object a certain quantity or amount, as in sales, leases, &c., the damages to be assessed should'not exceed the value of the subject-matter of the contract. (Code, book 7, tit. 47, ]. 1.)
But tlie vendor in good faith was alone entitled to the benefit of this restriction, and the court, from the references of Gregorio Lopez, were of opinion that the principle of warranty was adopted and applied in Spain, with the just and reasonable limitations which attached to it in Roman jurisprudence.
Pothier, in ills comments on this law of Justinian, after stating a case on tire facts of which the vendee would not be entitled to recover more than double the amount of the price, although his actual loss might exceed that sum, states the decision to be founded on the principle that the obligations which arise from contracts can only be formed from tire consent and intention of tire parties ; that the debtor, irr subjecting himself to damages for the non-performance of Iris obligation, is only understood as intending to bind himself to the highest damages within his contemplation at the execution oí the contract, so that when they are excessive they must be reduced to such sum as it was reasonable to expect"they might reach. (Pothier oir Obligations, vol. 1, marginal page 1G4.) The principle upon which the edict is founded was so consonant with reason arrd equity that the court felt bound to follow it, and gave as art indemnity an amount equal to tire value or price of the mother, viz, the sum of $025; and it was further intimated that the vendees were perhaps trot entitled, after air engagement of the slave for more tiran twenty-seven years, to recover more than a portion of the price for the probable remainder of her life.
I have extracted largely from this case, for the reason that it is the only commentary on the law in Partidas within the reach of the court. Tire opinion furnishes abundant evidence of the learning and research of (he court, and also of the difficulty of tiro subject, and it is far from being satisfactory. No fight was derived from the Spanish commentators, and the translation of tire edict of Justinian (from a misprint perhaps) is inaccurate. That portion of this law referred to by tiro court as cited in Pothier on Obligations, vol. 1, p. 164, is expressed in the following terms : “ Saucimus itaque, in omnibus easibus qui certain hdbent quaniilatem, vel naturam, veluli in venditionibus et locationibus et omnibus eoniraclibus, hoe quod interest, dupli quaniitatem minima excedei'e.’’’ This is translated by Pothier, and correctly, tlrat the damages in tire cases referred to ought nor, to exceed double the amount of tire price of the thing which is tire object of the obligation. This is materially different from the price or value of the thing as id is rendered in the opinion of tiro court.
But though there may be a mistake or misprint in the translation, yet the justice arid equity of the conclusion which tire court attained in the particular ease cannot ho questioned.
Upon tire whole, it must be acknowledged tlrat from the want of authorities no general, fixed, or invariable rule of construction can in this case be given to the terms of the law as found in tire Partidas. The law lias been in force for centuries. It may have been modified by subsequent provisions, and lias doubtless been construed by learned jurists and commentators. Tire subject demands a thorough investigation, as well from tire bar as from the court; for it must be remembered that warranties of real as well ns personal properly are, under the laws of Spain, governed by one uniform rule.
Note 78.—Iglehart v. Moore, 21 T., 501.
Note 79.—Hall v. York, 22 T., 641; Turner v. Miller, 42 T., 418.
On considering the charge of the judge it seems that tlie court did not err in instructing tlie jury that the price given must bo restored, and that tlie costs of the eviction suit must be paid; and the only error, if any, is in the direction to find interest from the execution of the contract. It would, perhaps, have been more equitable had interest been allowed only from the date of the judicial demand against the vendee. The services of the slave previously were a full compensation for the interest of the monej, and it was only from that date that hire was recovered against the vendee. But the amount is not of sufficient magnitude, nor is it sufficiently clear that any legal principle was violated to authorize a reversal or an amendment of the judgment, and it is therefore ordered that the same be affirmed.
Wheeler, J. Having been of counsel in the court below, I did not sit.
Judgment affirmed.