## SCHAFF v. HILL & THOMPSON.
### (No. 6697.)

(Court of Civil Appeals of Texas.   San Antonio.   Feb. 15, 1922.)

**1. Appeal and error ⬦⟿1003—Judgment on the facts reversed when based on conjecture and against preponderance of evidence.**

The Court of Civil Appeals will reverse a judgment on the facts only when it is evident that a verdict is based upon mere surmise, suspicion, or conjecture, and is against the preponderance of the evidence.

**2. Carriers ⬦⟿228(5)—Evidence held to prove delivery of calves to railroad, instead of cows, as claimed by shipper.**

Evidence *held* to prove that shipper delivered to railroad 60 cows and 8 calves, instead of 68 cows, as claimed by the shipper.

**3. Trial ⬦⟿350(6)—Refusal to submit issue as to whether cows died from inherent weakness held error.**

In shipper's action against railroad for death of cows during transportation, refusal to submit issue as to whether the cows died from inherent weakness, which the evidence seemed to raise, *held* error.

**4. Damages ⬦⟿69—Live stock shipper suing carrier could recover interest only as damages, and not as interest eo nomine.**

Live stock shipper suing railroad could recover interest to time of judgment, if at all, only as part of the damages, and not as interest eo nomine.

**5. Judgment ⬦⟿256(7)—Judgment may provide for interest from date thereof, though jury found damages without awarding interest.**

Where a live stock shipper sued for interest on the damages sustained, the fact that the jury found damages to have been sustained in a lump sum did not preclude the court from rendering judgment for such sum, with interest from the date of the judgment.

**6. Carriers ⬦⟿230(12)—Instruction fixing measure of damages not applicable to the case held erroneous.**

In an action for failure to deliver and for death of cattle, an instruction fixing the measure of damages as the difference between the market value of the shipment in the condition in which it should have arrived and that of such shipment in the condition in which it did arrive *held* erroneous, in that there was nothing in the case involving the condition of the cattle delivered.

Appeal from Jim Wells County Court; R. R. Mullen, Judge.

Suit by Hill & Thompson against C. E. Schaff, as receiver of the Missouri, Kansas & Texas Railway Company of Texas, and the San Antonio & Aransas Pass Railway Company. Judgment was rendered that plaintiffs take nothing from the second-named defendant, and was rendered for plaintiffs against the first-named defendant, and the first-named defendant appeals. Judgment reversed and cause remanded as to first-named defendant, and affirmed as to second-named defendant.

Kleberg, Stayton & North and John S. McCampbell, all of Corpus Christi, for appellant.

Perkins & Floyd, of Alice, and H. S. Bonham, of Beeville, for appellees.

FLY, C. J.   Appellees instituted this suit against appellant, as receiver of the Missouri, Kansas & Texas Railway Company of Texas, and the San Antonio & Aransas Pass Railway Company, to recover the sum of $524.96, alleged to be due from them for 10 cows out of a shipment of 68 cows delivered by appellees to an agent of appellant at North Fort Worth, Tex., to be transported to Alice, Tex.   The cause was submitted to a jury on special issues, and on their answers thereto judgment was rendered that appellees recover nothing as to the San Antonio & Aransas Pass Railway Company and recover of appellant the sum of $543.05.

In his endeavor to follow the new rules for briefing, adopted by the Supreme Court of Texas in 1921, appellant left it almost undiscoverable as to which of his assignments of error some of his propositions belong, and has increased the burdens of this court, as every attempt to follow the rules has so far done.   Those rules require that—

"Following the statement of the case there shall be stated consecutively, separately subdivided and numbered, the propositions or points upon which the appeal is predicated. These shall be germane to one or more of the assignments of error or relate to fundamental error."

It is apparent that it is not required that any proposition shall state the assignment upon which it is predicated, but that is left to the appellate court, to discover if it can, among the assignments, no matter how numerous, which "shall be set out at the back of the brief," as far removed from the propositions as possible.   Permission is given, however, for the assignments to take the place set apart to the propositions "following the statement of the case." In this instance 26 assignments of error are copied into the brief "following the statement of the case," and there are 10 propositions with nothing under some of them to indicate to which of the assignments they belong.   The subject, index, and list of authorities required to be entered on the flyleaf may be conducive to some good end, but less time and labor would be required and the end desired more easily and correctly attained under the old than under the new rules.

The first assignment of error assails the

action of the court in giving the jury the measure of damages which should guide them in answering the special issues, while the first proposition asserts that the overwhelming weight and preponderance of the evidence showed that 68 cows were not delivered to appellant, and consequently the answer to No. 1 was erroneous. No reference is made to which assignment the proposition should be attached, but by diligent search we discover that the twelfth assignment states that—

"The answer of the jury to question No. 1 of the court's charge and issues is without any evidence to support it."

In support of the first proposition appellant has copied into the brief the whole of the charge and answers of the jury, the special charges asked and given, a statement of the points of difference between the parties, and the evidence in full to which is appended an argument. This was undoubtedly thought to be necessary under the terms of new rule No. 31. The thought is possibly justified by the rule.

All of the testimony on the subject showed that 68 head of cattle were loaded into cars 52654, C. & E. I., and 1463, S. A. & A. P. It was shown by positive testimony for appellant that the cattle in the cars consisted of 60 cows and 8 calves, 32 cows being in one car and 28 cows and 8 calves in the other, and, when the cattle arrived in San Antonio in the same cars, there were 32 cows in one and 28 cows and 8 calves in the other. Two of the cows, being dead, were taken out, and when the cars arrived in Alice there were 58 cows and 8 calves in them. No witness for appellees swore positively that all the cattle in the two cars were cows as against the positive evidence for appellant that there were 8 calves in one of the cars when received by appellant. The same two cars, the identity of which was not denied, were received in San Antonio and, in order to sustain the verdict, it must be assumed that before or after the cattle left Fort Worth 8 cows were taken out of one of the cars and 8 calves substituted. It would involve a heavy strain on the credulity of a court to sustain any such surmise or presumption. This would involve a case of theft, and thieves have never been known to carry live animals of an inferior grade around with them to substitute for those of a superior kind. It seems an untenable and unreasonable assumption that there was a substitution of the animals after they were delivered to appellant, but it would be much more reasonable to assume that, if there was any substitution, it was done before appellant obtained possession of the cattle. Neither is there any ground for the assumption that the cars were mixed at or before delivery. There is no testimony tending to show a mixing of cars and it is not claimed that any cow delivered to appellees at Alice was not of the number bought by appellees from the Cassidy Southwestern Live Stock Company. There was no evidence of the breakage of or tampering with the seals on either of the cars when they arrived in San Antonio. They were inspected in the latter place, and the inspector, who was not an employé of a railway company, found 28 cows and 8 calves in car 1463, S. A. & A. P., and 32 cows in car 52654, C. & E. I. They were unloaded, fed, and watered and were reloaded, 27 cows and 8 calves in one car and 31 cows in the other, 2 of the cows having died, one on the way and the other after reaching San Antonio.

The live stock inspector for all the railroads at Fort Worth inspected the two carloads of cattle, and swore:

"I am positive there were calves in one of the cars. * * * I saw these cattle loaded into the cars and I am positive there were calves in one of the cars."

In opposition to this positive testimony and the strong circumstances tending to show 8 calves were delivered to the appellant in one of the cars billed to appellees, J. A. Hill, one of the appellees, testified that he ordered 68 head of cows from the commission company and received at Alice 58 head of cows and 8 calves. He ordered no calves. A bill of lading or shipper's contract was introduced which recited that there were "two cars, said to contain 68 head of cows." Jack Lary, "order buyer" for the commission company, swore:

"These cattle were cows mostly, some were heifers. There were some heifers in the shipment, but most were cows. There were not any calves in the shipment."

This witness, however, weakened his testimony so materially as to almost destroy it by stating:

"I did not personally see these cattle moved into the cars."

He also swore that appellant had no station and did not run into North Fort Worth where the cattle were loaded. The cattle were delivered by the commission company to the Fort Worth Stock Yards Company, which delivered them, over a belt line, to appellant. Frank Berry, "dock checker" and "yard master" for the Fort Worth Stockyards Company, testified that he was supervising the loading and unloading of cattle for his employer, and that the record of said employer showed that there were 32 cows in one car and 36 in the other. While swearing that he handled the two cars of cattle, he did not swear that they were all cows, and no calves among them. He merely swore what the record of his employer showed. H. D. Henderson, superintendent

of the cattle yard for the commission company, swore that his employer bought 68 cows for appellees, and he saw them in the stockyard. He saw the cattle in the forenoon of the day they were shipped before they had been placed in the two cars. He swore that he did not know what was done with the cattle after he saw them in the pens of the Fort Worth Stockyards Company. They had not then been delivered to the railway company. The whole of the testimony shows that appellant had nothing to do with the cattle until they were delivered to him by the belt line in the two cars. The belt line is the property of the stockyards company.

There is not one word of testimony to show that the cattle delivered by the belt line to appellant were not carried to San Antonio, unless it is to be inferred from the fact that 68 head of cows had been bought for appellees by the commission company, and were then placed in the pens of the Fort Worth Stockyards Company, and that the latter company loaded certain cattle in two certain cars and delivered them to its belt line, which delivered them to appellant, who landed them in San Antonio. If the 8 calves were placed in the car and 8 cows taken out by appellant, it must have occurred after the delivery by the belt line. There was no mixing or confusion of cars, for the same two cars loaded by the stockyards company were transported to San Antonio by appellant, and the 28 cows that were in car 1463, S. A. & A. P., at San Antonio were among the number loaded into it by the stockyards company. When and where were the other 8 cows taken out and calves substituted for them? The testimony fails to show that appellant made the substitution.

The evidence showed that 32 animals were loaded into one car and 36 into another, clearly indicating that there was such a difference in the size of the 36 animals and the 32 that it was possible to place 6 more of the former in a car than of the latter. The evidence fails to indicate that the smaller cows were selected and placed in one car and the larger ones in the other. The fact of the calves being in the car containing the larger number of animals would indicate that they had been loaded therein, as the only positive testimony showed, and were so delivered to appellant.

[1, 2] It is with much hesitancy that this court will reverse a judgment upon the facts, but it has the power to do so, and when it is evident that a verdict is based upon mere surmise, suspicion, or conjecture, and is against the preponderance of the evidence, it is its duty to set aside such verdict, and see that the property of a litigant shall not be taken by such means. It is unreasonable to surmise that, because 68 cows may have been put into pens belonging to the stock-yards company, and may have been put in two certain cars, and the two cars afterwards delivered to the appellant, that 8 of the cows were in some inexplicable way disposed of and 8 calves put in their place by appellant, especially when Robinson, who was in the employ of the Western Weighing Association, and whose duty it was to inspect the cattle, stated positively and unequivocally that the "cattle in car 1463 were small cows and calves." That testimony was practically uncontradicted, and was entirely consistent with reason and the circumstances of the case. The other facts bear out and sustain Robinson's testimony.

[3] The testimony seemed to raise the question of inherent weakness in the 2 cows that died, and the court erred in refusing to present that issue to the jury.

[4, 5] If appellees are entitled to any interest, it must be recovered, not as interest eo nomine but as damages because the law makes no provision for interest on damages. Appellees prayed for $524.96, although they alleged the 10 cows were of the value of $50 each, aggregating $500. They seek to recover interest at 6 per cent. per annum on the $524.96 from March 24, 1920, the date on which the cattle were delivered to appellant. It seems, therefore, that appellees are seeking to recover interest both as interest and as damages. They are entitled to sue for 6 per cent. interest as a part of the damages on the principal damage from the date of the damage, or they can recover 6 per cent. interest on damages found by the jury from the date of the judgment. Of course, the sum of the principal damages and the interest sued for as damages and given by the jury would only bear interest from the date of the judgment. The jury found the damages sustained by appellees to have been $500, but gave no interest. This action, or nonaction on the part of the jury did not, however deter the court from rendering a judgment for $500 with 6 per cent. interest from March 30, 1920, the whole amounting to $543.05, and then providing for interest on that sum at 6 per cent. from date of judgment. Under the allegations of the petition and the verdict of the jury the judgment, if rendered at all, should have been for $500, with 6 per cent. interest from date of judgment.

It is admitted by appellees that they received 8 calves which did not belong to them, but what became of them is not disclosed by the record. No one seems to be interested in them, but appellees have some one else's calves if they are correct in their statements, and the value of the calves should be deducted from the value of the cows.

[6] The measure of damages given by the court was "the difference between the market value of their shipment of stock in the condition in which it should have arrived at

its destination, and the market value of such shipment of stock in the condition in which it did arrive at the point of destination." Appellant complains of the measure of damages, and, while a proper measure of damages might be permissible in some cases submitted on special issues, a measure of damages which was not pertinent to allegations or proof should not have been given. There was nothing in the case involving the condition of the 10 cows whose value was sued for, for, if they were ever delivered to appellant, they were delivered regardless of any condition. The charge had no pertinency to any theory or issue in the case and of course should not have been given, and the jury evidently thought so, for they rendered a verdict for the value of the cows.

None of the other errors complained of will probably arise on another trial, and need not be considered.

For the insufficiency of the evidence and the errors indicated, the judgment is reversed and the cause remanded as to the appellant, and is affirmed as to the San Antonio & Aransas Pass Railway Company.